■ In the Matter of GORDON CONKLIN et al., Petitioners, v. THOMAS RILEY et al., Constituting the Landmark and Preservation Appeals Board of Rochester, Respondents, and GOODMAN GARDENS NURSING HOME Co., INC., Intervenor-Respondent.— Determination unanimously confirmed, without costs. Memorandum: This proceeding properly should have been disposed of at Special Term. However, this court may consider it and determine it on the merits, which we do in the interest of expediting its disposition (CPLR 7804, subd. [g]; General City Law, § 82, subd. 1, par. [c]; *Matter of Willow Garden Apts.* v. *Riker*, 36 A D 2d 892; *Matter of Fasani* v. *Rappaport*, 30 A D 2d 588). (Review of determination granting application to nursing home, transferred by order of Monroe Special Term.) Present — Goldman, P. J., Del Vecchio, Marsh and Moule, JJ.

■ HOWARD ANGIONE, as Executor of GENEVIEVE ANGIONE, Deceased, Respondent, v. ROCHESTER SAVINGS BANK, Appellant.— Judgment unanimously reversed, on the law and facts, and a new trial granted, with costs to abide the event. Memorandum: Although decedent had had bowel trouble for some time, the issue of decedent's knowledge that he had a serious health problem at the time of his application for insurance on October 11, 1967 was clearly a jury question. However, on December 29, 1967 he was informed by a physician that "There was a lesion in his rectum which could be a very serious lesion" and he was told to see another doctor "immediately". The same day he was informed by the second doctor that "it would be necessary to see Dr. Soehner for a biopsy of a lesion that was in the rectum". He was examined by the third physician and admitted to the hospital on January 2, 1968, the day upon which the insurer bank received by mail decedent's check for the first annual premium. On January 3, 1968 the biopsy revealed that decedent "had cancer of the rectum". The next day, without any information about decedent's health after examination by its doctor, the insurer mailed the policy to decedent. The insured's failure to disclose the important changes in his condition of health, of which he became fully aware after his application for insurance, requires setting aside the verdict in his favor. If the knowledge of his physical condition was made known to him before he sent his check to the insurer for the first premium, decedent was under a duty to disclose to appellant bank all conditions materially affecting the risk (*Stipcich* v. *Life Ins. Co.*, 277 U. S. 311; *Goldstein* v. *New York Life Ins. Co.*, 176 App. Div. 813, affd. 227 N. Y. 575). Until the examination by the second doctor, who directed decedent to the doctor who performed the biopsy, no one had told decedent that his condition involved a malignancy. Decedent's premium check is dated December 29, 1967, the same day on which decedent definitely learned of the cancerous lesion. If decedent had delivered the check in person on that date and had received the policy before he learned of his malignant condition, the issue would have properly been a question for the jury. The record does not indicate whether decedent signed and mailed his check before or after he saw the first physician on the 29th. Under these circumstances we believe that there should be a new trial to present proof on this question, if such is available. (Appeal from judgment of Monroe Trial Term in action on life insurance contract.) Present — Goldman, P. J., Del Vecchio, Marsh and Moule, JJ.